IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WITRICITY CORPORATION and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-1671 (MSG) |
| MOMENTUM DYNAMICS CORPORATION, | ) ) | |
| Defendant. | ) | |

**DEFENDANT MOMENTUM DYNAMICS CORPORATION'S
OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION
TO STAY PENDING *INTER PARTES* REVIEW**

OF COUNSEL:

Maximilian A. Grant
Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Blake Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

March 25, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDING..............................................................1

II.   SUMMARY OF ARGUMENT ...........................................................................................2

III.  STATEMENT OF FACTS ................................................................................................3

IV.  LEGAL STANDARD.......................................................................................................6

V.   ARGUMENT ....................................................................................................................7

      A.    A Stay Will Simplify The Issues Before This Court And Reduce The Burden Of Litigation..............................................................................................7

      B.    Discovery Is Not Complete And No Trial Date Has Been Set .............................11

      C.    A Stay Will Not Unduly Prejudice Plaintiffs Or Allow Momentum To Gain A Clear Tactical Advantage .......................................................................12

VI.  CONCLUSION...............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advanced Micro Devices, Inc. v. MediaTek Inc.*,
No. 19-70-CFC, 2019 WL 4082836 (D. Del. Aug. 29, 2019) ..................................................9

*Bio-Rad Labs. Inc., v. 10x Genomics, Inc.*,
No. 18-1679-RGA, 2020 WL 2849989 (D. Del. June 2, 2020)...............................................15

*BodyMedia, Inc. v. Basis Sci., Inc.*,
No. 12-133-GMS, 2013 WL 2462105 (D. Del. June 6, 2013) .................................................12

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
No. 12-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014) ...........................................10

*British Telecomms. PLC v. IAC/InterActiveCorp.*,
No. 18-366-WCB, 2019 WL 4740156 (D. Del. Sept. 27, 2019) ....................................*passim*

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) ...........................................12

*Celorio v. On Demand Books LLC*,
No. 12-821-GMS, 2013 WL 4506411 (D. Del. Aug. 21, 2013)...............................................13

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
No. 18-533-RGA, 2019 WL 4098002 (D. Del. Aug. 29, 2019) ....................................10, 15

*Ethicon, Inc. v. Quiqg*,
849 F.2d 1422 (Fed. Cir. 1988)................................................................................................6

*Ethicon LLC v. Intuitive Surgical, Inc.*,
No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019)...............................................10

*Ever Win Int'l Corp. v. RadioShack Corp.*,
902 F. Supp. 2d 503 (D. Del. 2012).................................................................11, 13, 16, 17

*Huvepharma Eood. v. Associated British Foods, PLC*,
No. 18-129-RGA, 2019 WL 3802472 (D. Del. Aug. 12, 2019) ....................................8, 14, 15

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ....................................*passim*

*Mkt.-Alerts Party Ltd. v. Bloomberg Fin. L.P.*,
922 F. Supp. 2d 486 (D. Del. 2013).........................................................................................10

*Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*,
   No. 11-176-LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011)........................................11, 16

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016)........................................................................................6

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
   No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ........................................9

*Pact XPP Schweiz AG v. Intel Corp.*,
   No. 19-1006-JDW (D. Del. Nov. 5, 2020)........................................................................10

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
   No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ........................... *passim*

*RetailMeNot, Inc. v. Honey Sci. LLC*,
   No. 18-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 23, 2020) ...................................7, 15

*Sito Mobile R&D IP, LLC v. World Wrestling Entm't, Inc.*,
   No. 21-721-CFC (D. Del. Dec. 20, 2021) ........................................................................10

*Smartflash LLC v. Apple Inc.*,
   621 F. App'x 995 (Fed. Cir. 2015) ..................................................................................12

*SunPower Corp. v. PanelClaw, Inc.*,
   No. 12-1633-GMS, 2014 WL 12774919 (D. Del. May 16, 2014) ...................................14

*SZ DJI Tech. Co. v. Autel Robotics USA LLC*,
   No. 16-706-LPS, 2019 WL 1244948 (D. Del. Mar. 18, 2019).........................................15, 16

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)............................................................................... *passim*

*Wilson Wolf Mfg. Corp. v. Brammer Bio, LLC*,
   No. 19-2315-RGA (D. Del. Dec. 8, 2020) ........................................................................7

## STATUTES

35 U.S.C. § 314 ..............................................................................................................2, 5

35 U.S.C. § 315(e)(2)..........................................................................................................8

35 U.S.C. § 316 ..............................................................................................................15

## I.  NATURE AND STAGE OF THE PROCEEDING

Plaintiffs WiTricity Corporation ("WiTricity") and Massachusetts Institute of Technology ("MIT") (collectively, "Plaintiffs"[1]) sued Defendant Momentum Dynamics Corporation ("Momentum") on December 9, 2020, alleging infringement of seven patents: U.S. Patent Nos. 7,741,734 ("'734 patent"); 8,304,935 ("'935 patent"); 8,710,701 ("'701 patent"); 8,884,581 ("'581 patent"); 9,184,595 ("'595 patent"); 9,306,635 ("'635 patent"); and 9,767,955 ("'955 patent").  D.I. 1.

Five patents have been dismissed from this case.  The Court dismissed the '701 patent as not directed to patent-eligible subject matter.  D.I. 30.  The Patent Trial and Appeal Board ("PTAB") granted Momentum's request for *inter partes* review ("IPR") of the '581, '635, '935, and '955 patents, and Plaintiffs dismissed these four patents with prejudice to avoid a Court-ordered stay to this litigation.  *See* D.I. 52.  Thus, only the '734 and '595 patents remain.

Although the PTAB initially denied Momentum's IPR petition for the '734 patent, Momentum filed a timely request for rehearing.  While Momentum's request was pending, Momentum twice asked Plaintiffs to confirm that, if review was instituted on rehearing, they would treat the '734 patent in the same manner as its four prior stayed-or-dismissed patents.  Plaintiffs twice refused to take a position, claiming that the scenario "[wa]s premature and unlikely to present itself."  Ex. 1 (1/25/2022 A. Brausa Email).

Intervening events proved Plaintiffs wrong.  On March 16, 2022, the PTAB instituted *inter partes* review of the '734 patent, stating that "it was error to deny [Momentum's] petition."  *See* D.I. 60-1 at 2-3.  Momentum contacted Plaintiffs' counsel the same day to ask, again, if Plaintiffs would now agree to stay this litigation or dismiss the '734 patent with prejudice.  Plaintiffs refused.

---

[1] Auckland UniServices Limited was removed as a plaintiff from this action.  *See* D.I. 52.

## II.    SUMMARY OF ARGUMENT

This motion should have been resolved by agreement.  Defendants have twice asked Plaintiffs to agree to treat the '734 patent in the same manner as its previous four patents, by either dismissing it with prejudice or agreeing to stay the case.  Plaintiffs have twice refused to take a position, claiming that the situation was "unlikely to present itself."  Ex. 1 (1/25/2022 A. Brausa Email).  It presents itself now.  Given Plaintiffs' refusal to dismiss the '734 patent, Momentum respectfully requests that the Court stay this litigation pending resolution of the IPR proceedings on the '734 patent.

The "liberal policy in favor of stays" compels that "after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed."  *British Telecomms. PLC v. IAC/InterActiveCorp.*, No. 18-366-WCB, 2019 WL 4740156, at *3 (D. Del. Sept. 27, 2019) (Bryson, J., sitting by designation).[2]  That policy applies with force here, where one of Plaintiffs' two remaining asserted patents—covering the same accused products—has had an IPR petition instituted.  *See id.* at *7 ("[D]istrict courts have frequently issued stays in cases in which IPR proceedings have been instituted on fewer than all the claims asserted in the related litigation.").  Consistent with that policy, each of the three relevant factors weighs in favor of a stay.

*First*, staying this case will simplify the issues before the Court and reduce the burden of litigation, because the instituted IPR petition is likely to invalidate every relevant claim of the '734 patent.  The institution decision reflects the PTAB's considered determination that, on the merits, Momentum "has shown a reasonable likelihood that it would prevail in establishing unpatentability" of the challenged claims, which will simplify the remaining issues before this Court.  D.I. 60-1 at 2, 10, 11, 12, 15; *see also* 35 U.S.C. § 314.  Should all claims be invalidated,

---

[2] All emphases added, and internal quotation marks and citations omitted, unless otherwise noted.

half of the patents remaining in this litigation—and six out of the seven patents originally asserted against Momentum—will be dismissed. And MIT may be dismissed as a plaintiff, narrowing the scope of discovery, because the only remaining patent—the '595 patent—is assigned to WiTricity. Should any claims survive, the invalidity issues before this Court will be streamlined by IPR-related estoppel provisions, and the Court will have the benefit of the PTAB's thinking when performing its claim construction and invalidity analyses.

*Second*, this case is in its infancy. Pleadings are ongoing, discovery has barely begun and will not be complete until March 2023, and no dates have been set for *Daubert* motions, summary judgment motions, or trial. D.I. 57 at 3, 8.

*Third*, a stay will not unduly prejudice Plaintiffs, as Momentum diligently drafted and filed its IPR petitions. Any IPR-related delay would be minimal compared to the delay of Plaintiffs' own making. Plaintiffs' Complaint acknowledges that they were aware of the allegedly infringing activity *more than five years ago.* D.I. 1 ¶¶ 23, 34. Plaintiffs cannot now claim a need for urgency; they waited years to sue and did not seek a preliminary injunction.

Momentum requests that the Court stay this case until final resolution of the '734 patent's IPR proceedings.[3]

## III.    STATEMENT OF FACTS

Plaintiffs sued on December 9, 2020, alleging infringement of seven patents owned by three different entities. D.I. 1. Soon after, Momentum moved to dismiss Plaintiffs' infringement claims for the '701 and '595 patents, which the Court granted as to the '701 patent. D.I. 30.

Although the statute permits IPR petitions challenging the validity of the asserted patents

---

[3] Should the Court be inclined to grant this motion, Momentum will consent to also staying its counterclaims against Plaintiffs. *See* D.I. 55 ¶¶ 52-97. Plaintiffs will not be prejudiced by a stay of Momentum's counterclaims, given that Plaintiffs have moved to dismiss them. D.I. 66.

to be filed up to one year after the service of a district court action, Momentum diligently filed five petitions by June 21, 2021.  Momentum's IPR petitions contain hundreds of pages of factual and legal analysis demonstrating that the claims of the challenged patents are invalid over the prior art. Each petition is supported by extensive documentary evidence, including detailed declarations from experts in the field of wireless power transmission.

From November 2021 to January 2022, the PTAB instituted *inter partes* review on four of the five challenged patents—the '635 patent, the '581 patent, the '955 patent, and the '935 patent. *See* D.I. 33, 34, 36, 40.  The PTAB initially declined to institute review of the '734 patent on December 10, 2021.  *See* D.I. 35.  On January 10, 2022, Momentum filed a request for rehearing of that decision.  *See* D.I. 40-2.

On January 11, 2022, Plaintiffs informed Momentum that they intended to file an amended complaint including infringement counts based on only the '734 and '595 patents and would dismiss the remaining patents without prejudice. Ex. 2 (1/11/2022 A. Brausa Email).  Plaintiffs, however, refused to disclose whether they would similarly dismiss the '734 patent if rehearing was granted, explaining that "that decision is premature and unlikely to present itself, given the unlikelihood of the Board reversing its institution denial." Ex. 1 (1/25/2022 A. Brausa Email).

Momentum explained that Plaintiffs' refusal to either stay or dismiss with prejudice the four patents in pending IPR proceedings threatened to burden the Court with piecemeal, serial litigation involving the same technology and addressing the same accused product.  *See* D.I. 46 at 1.  Momentum further explained that—as evidenced by the instant motion—Plaintiffs' refusal to acknowledge the '734 patent's rehearing petition threatened "even more piecemeal litigation and motion practice," including "forc[ing] Momentum to file (and the Court to decide) yet another motion to stay the proceedings" if the rehearing was granted.  *Id.* at 2.

4

Following a status conference on January 27, 2022, Plaintiffs dismissed with prejudice the four patents with pending IPR proceedings to avoid a Court-ordered stay. *See* D.I. 47, 52. Plaintiffs again declined to state whether they would dismiss with prejudice the '734 patent if PTAB instituted *inter partes* review, "given the uncertainty regarding its timing, and the unlikelihood of success." D.I. 47 at 1.

On March 16, 2022, the PTAB instituted *inter partes* review of the '734 patent, stating that "it was error to deny [Momentum's] petition." *See* D.I. 60-1 at 3. Although Plaintiffs' Complaint identifies only claim 6 of the '734 patent as allegedly infringed (*see* D.I. 1 ¶ 22), the PTAB found that Momentum's petition demonstrates that there is a reasonable likelihood that all challenged claims of the '734 patent (claims 1-7, 13, 19-22, 25, 26, 29, 30, 33, 34, 37, 38, 41, 42, 45, 46, 49, 50, 53, 54, 57-62, 64, 65, and 67-70) are invalid. 35 U.S.C. § 314. Plaintiffs do not dispute that this covers *every* additional claim that Plaintiffs could colorably (but incorrectly) allege in this action. *See* D.I. 24 at 5 (identifying claims in Momentum's original motion to stay); *see generally* D.I. 28 (Plaintiffs' opposition).

On the same day the PTAB instituted *inter partes* review of the '734 patent, Momentum asked Plaintiffs if they would dismiss the '734 patent with prejudice or stay the district court case pending the outcome of the '734 patent's IPR proceeding. Ex. 3 (3/16/2022 M. Grant Email). Momentum informed Plaintiffs that a failure to respond by close of business on March 18, 2022, would be understood as a refusal to agree to either option and that Momentum would move to stay this litigation. *Id.* Plaintiffs responded on March 18 only that they would "respond in substance next week." Ex. 4 (3/18/2022 A. Brausa Email). Plaintiffs failed to provide any further response, and Momentum asked again on March 24 for Plaintiffs to provide its position. Finally, on March 25, the parties met and conferred. Plaintiffs informed Momentum that they would not

withdraw the '734 patent with prejudice and would oppose Momentum's motion to stay.  Plaintiffs also set forth an alternative proposal deferring its decision on whether to dismiss with prejudice or stay this case until after Momentum produces its core technical documents on April 15, 2022.  Momentum informed Plaintiffs that it would not agree to their partial stay because Plaintiffs had not articulated a compelling reason why this production is needed to determine whether the case should be stayed or the '734 patent should be dismissed with prejudice.  Further, the burden of collecting and producing documents, including collecting and producing confidential information, is not warranted given that the claims of the '734 patent are likely to be invalidated by the PTAB.  On the same day as the meet and confer, Momentum filed this motion.

## IV.   LEGAL STANDARD

"[T]he question whether to stay proceedings pending review by the [PTAB] of the validity of the patent or patents at issue in the lawsuit is a matter committed to the district court's discretion."  *British Telecomms.*, 2019 WL 4740156, at *2 (citing *Ethicon, Inc. v. Quiqq*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  "A stay is particularly justified when the outcome of a [PTAB] proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."  *Id.* at *2.

In reaching a decision, courts consider three factors: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage."  *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).  Courts also may consider "whether a stay will reduce the burden of litigation on the parties and the court," either as a fourth factor or "as part of the factor directed to simplifying the issues."  *British Telecomms.*, 2019 WL 4740156 at *2-3; *see also Murata Mach.*

*USA v. Daifuku Co.*, 830 F.3d 1357, 1362-63 (Fed. Cir. 2016) (holding that there was no error in considering the burden of litigation in determining whether to stay a case).

## V.    ARGUMENT

The Court should stay this case pending resolution of the '734 patent's IPR proceedings because all three of the traditional factors weigh strongly in favor of a stay.  ***First***, a stay will simplify the issues before the Court, and reduce the burden of litigation, by definitively resolving whether half the patents at issue in this case are invalid and whether MIT should remain a Plaintiff. ***Second***, this case is still in its infancy.  Pleadings are ongoing, discovery has barely begun and will not be complete until March 2023, and no dates have been set for *Daubert* motions, summary judgment motions, or trial.  D.I. 57 at 3, 8.  ***Third***, a short stay will not prejudice Plaintiffs, who admittedly waited *five years* after learning of Momentum's alleged infringement before bringing this lawsuit.  D.I. 1 ¶¶ 23, 34.

### A.    A Stay Will Simplify The Issues Before This Court And Reduce The Burden Of Litigation

Under the first factor, the Court considers "whether granting the stay will simplify the issues for trial."  *Princeton Digital*, 2014 WL 3819458, at *2.  This is "the most important factor bearing on whether to grant a stay."  *RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937-CFC-MPT, 2020 WL 373341, at *3 (D. Del. Jan. 23, 2020).

The PTAB has instituted review of one of the two remaining patents in this case.  *Supra* at 3-5.  In such cases, where "the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed."  *British Telecomms.*, 2019 WL 4740156, at *3; *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) ("[N]o doubt the case for a stay is stronger after [IPR] has been instituted.").  Indeed, "it has become fairly routine to stay cases after IPRs have been instituted."  *Wilson Wolf Mfg. Corp. v. Brammer Bio,*

7

*LLC*, No. 19-2315-RGA, slip op. at 4 n.7 (D. Del. Dec. 8, 2020) (Ex. 5).  The simplification factor "strongly supports" granting a stay when IPR petitions have been instituted because "the only question is not *whether* the IPR results will simplify the trial, but what the extent of simplification will be."  *Huvepharma Eood. v. Associated British Foods, PLC*, No. 18-129-RGA, 2019 WL 3802472, at *1 (D. Del. Aug. 12, 2019).

Here, simplification will be extensive because the PTAB has instituted review of ***every*** relevant claim of the '734 patent.  As a result, the requested stay will simplify the issues before the Court, regardless of the ultimate outcome of the IPR.  "[I]f the PTAB invalidates all of the claims before it, the case will unquestionably become simpler," because one of the two asserted patents will be removed from the case altogether.  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *9 (D. Del. Aug. 21, 2019) (Bryson, J., sitting by designation).  Additionally, if all of the claims are invalidated and the '734 patent is removed from the litigation, MIT—the assignee of the '734 patent—may also be dismissed as a plaintiff, significantly reducing the discovery and litigation burden on the parties and the Court.

In the unlikely event that the PTAB invalidates less than all (or even none) of the claims on which it has instituted review, the issues remaining before this Court will still be simplified, for three reasons.  ***First***, the Court's invalidity analysis will be streamlined by statutory estoppel provisions, which preclude Momentum from asserting that any challenged claim "is invalid on any ground that the petitioner raised or reasonably could have raised" during the IPR proceeding. 35 U.S.C. § 315(e)(2); *see also, e.g.*, *Huvepharma*, 2019 WL 3802472, at *1 (finding that case would be simplified by "removing some or all anticipation and obviousness issues from trial due to the estoppel provisions relating to an IPR").

***Second***, any invalidated claims would no longer be the subject of discovery, claim

8

construction disputes, expert reports, summary judgment motions, or trial on infringement or invalidity. *See IOENGINE*, 2019 WL 3943058, at *9 (noting that "the task … for the parties, the jury, and the Court … will become significantly easier than it would have been" with the additional claims). Indeed, "[i]n a case involving technology as complex as the technology in this case, which is sure to challenge the ability of the jury to absorb and rationally decide issues of infringement and invalidity, there is a particularly high premium on simplification." *Id.*

**Third**, the IPR proceedings, whether successful or not, will generate additional prosecution history, which can assist the Court in its analysis by providing it with intrinsic evidence relevant to future issues of claim construction, infringement, and validity. *British Telecomms.*, 2019 WL 4740156, at *8. Moreover, the Court will have the benefit of the PTAB's analyses and conclusions, which will assist the Court in its own analysis and thereby streamline any remaining invalidity issues. *Id.* ("[T]he expertise of the PTAB judges in this complex field of art is likely to be of considerable assistance to the Court.").

The fact that only one of the two remaining patents has been instituted does not undermine the significant simplification that would result from a stay. "[D]istrict courts have frequently issued stays" in such cases, because "the policies favoring simplification and the reduction of litigation" remain applicable even "when IPRs are instituted on fewer than all the asserted claims." *British Telecomms.*, 2019 WL 4740156, at *7; *see also Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) ("[T]he issue simplification factor does not require complete overlap" between district court issues and IPR proceedings.). That is particularly so when the asserted patents involve the same accused products and technology, as here. *See, e.g.*, *Advanced Micro Devices, Inc. v. MediaTek Inc.*, No. 19-70-CFC, 2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019) (finding that a stay will simplify the action where

"claims relating to [multiple asserted] patents implicate the same witnesses, accused products …
and evidence").  Thus, district courts routinely stay cases where fewer than all the patents-in-suit
are subject to IPR proceedings.  *See, e.g.*, *Sito Mobile R&D IP, LLC v. World Wrestling
Entm't, Inc.*, No. 21-721-CFC, slip op. at 1,4 (D. Del. Dec. 20, 2021) (Ex. 6) (granting stay where
IPR instituted on just more than half of the patents); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer
Holdings, Inc.*, No. 12-1107-GMS, 2014 WL 1369721, at *1 (D. Del. Apr. 7, 2014) (granting stay
where IPR instituted on 2 of 6 patents); *Pact XPP Schweiz AG v. Intel Corp.*, No. 19-1006-JDW,
slip op. at 1, 4 (D. Del. Nov. 5, 2020) (Ex. 7) (granting stay where IPR instituted on less than all
asserted patents); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, No. 18-533-RGA,
2019 WL 4098002, at *1 (D. Del. Aug. 29, 2019) (same); *Ethicon LLC v. Intuitive Surgical, Inc.*,
No. 17-871-LPS, 2019 WL 1276029, at *1-2 (D. Del. Mar. 20, 2019) (same).

   As part of the simplification analysis, the Court may consider "whether a stay will reduce
the burden of litigation on the parties and the court."  *British Telecomms.*, 2019 WL 4740156,
at *2; *see also VirtualAgility*, 759 F.3d at 1313 (noting "a great deal of overlap" between
simplification of issues and reduction of burden).  The reduction of burden test is intended to
"place[] a very heavy thumb on the scale in favor of a stay being granted."  *Mkt.-Alerts Party Ltd.
v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 496 n.14 (D. Del. 2013) (quoting legislative history).

   For the same reasons discussed regarding simplification, granting a stay will also reduce
the burden of litigation on the parties and the Court.  *See VirtualAgility*, 759 F.3d at 1314 n.4
("[S]implifying [the] issues would as a general matter always reduce the burdens of litigation on
the parties and the court.").  The PTAB has determined that Momentum's IPR petition
demonstrates a "reasonable likelihood" that the claims of the '734 patent are invalid.  Any claims
that the PTAB invalidates will conserve judicial and party resources, because there will be no need

for discovery motions, claim construction briefing, dispositive motions, or trial with respect to the infringement or invalidity of such claims.  For any claims that survive an instituted IPR, the Court's burden in resolving validity issues will be significantly lessened by the extensive estoppel provisions binding Momentum, and by virtue of having the PTAB's analysis before the Court when deciding any invalidity or claim construction issues.  *British Telecomms.*, 2019 WL 4740156, at *8.

This factor weighs strongly in favor of a stay.

### B.      Discovery Is Not Complete And No Trial Date Has Been Set

The second factor supports a stay where, as here, discovery is not complete and no trial date has been set.  *Princeton Digital*, 2014 WL 3819458, at *2.  "Motions to stay … are most often granted when the case is in the early stages of litigation" because an early stay "advance[s] judicial efficiency and maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."  *Id.* at *3.

This case is in its earliest stages.  Pleadings are ongoing, and discovery has just begun and will not be complete until March 3, 2023.  D.I. 57 at 3.  The claim construction hearing is not scheduled until November 9, 2022, and dates for *Daubert* motions, summary judgment motions, and trial are not set and will not be set until after the Court issues a claim construction order.  *Id.* at 7-8.  "[T]he most burdensome stages of the case[]—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future."  *IOENGINE*, 2019 WL 3943058, at *5.  Thus, this case is "in its very early stages" and this factor "weighs strongly in favor of a stay."  *Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 507–08 (D. Del. 2012); *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, No. 11-176-LPS, 2011 WL 5523315, at *3 (D. Del. Nov. 14, 2011) (granting stay where "[d]iscovery has just begun and

will not be complete for another six months," "the deadline for filing case dispositive motions is nearly a year away," and "a date for trial has not been set").

Indeed, courts have found that this factor weighs in favor of a stay even in cases far more advanced than this one. *See, e.g.*, *British Telecomms.*, 2019 WL 4740156, at *4-5 (factor weighed in favor of a stay despite completion of claim construction briefing); *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (factor weighed in favor of a stay despite numerous depositions occurring); *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (factor weighed in favor of stay even where the district court had held hearing on claim construction, dispositive motions, and *Daubert* challenges).

This factor weighs strongly in favor of a stay.

### C.     A Stay Will Not Unduly Prejudice Plaintiffs Or Allow Momentum To Gain A Clear Tactical Advantage

The third factor also weighs in favor of a stay.  Momentum's diligently requested and limited stay will neither unduly prejudice Plaintiffs nor provide a clear tactical advantage to Momentum.  Because every stay could delay litigation, delay alone cannot establish undue prejudice.  *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-133-GMS, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013).  Instead, courts analyze whether the moving party would obtain an "*inappropriate* tactical advantage" using four sub-factors: "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties." *Princeton Digital*, 2014 WL 3819458, at *4 (emphasis original).  Each sub-factor weighs in favor of a stay here.

***First***, the timing of Momentum's request for *inter partes* review weighs in favor of a stay, because its five IPR petitions, including the initial petition for the '734 patent, were filed on or before June 21, 2021, just six months after Plaintiffs sued Momentum.  Courts have found that

similar diligence by a defendant supports granting a stay.  *Id.* at \*4-5 (sub-factor weighed in favor of a stay where IPR was filed "a year to the day" after complaint); *Ever Win*, 902 F. Supp. 2d at 508-09 (sub-factor weighed in favor of a stay due to "seven-month gap" between complaint and IPR).

As noted, Plaintiffs' own delay in filing this lawsuit undermines any claims of undue prejudice based on timing.  According to their Complaint, Plaintiffs knew of Momentum's allegedly infringing activity by June 4, 2015.  D.I. 1 ¶¶ 23, 34.  Yet Plaintiffs waited ***more than five years***, until December 9, 2020, to file this lawsuit.  D.I. 1.  On that record, Plaintiffs cannot credibly claim "this to be a 'time of the essence matter' or that, absent expeditious litigation, [Plaintiffs] will suffer undue prejudice."  *See Celorio v. On Demand Books LLC*, No. 12-821-GMS, 2013 WL 4506411, at \*1 n.1 (D. Del. Aug. 21, 2013) (finding no undue prejudice from a stay where plaintiff learned of alleged infringement but "waited five years before filing" lawsuit).

Plaintiffs previously tried to explain away this delay by claiming that they did not have "enough public information about Momentum's system to [create] claim charts" until November 2020.  D.I. 28 at 6-7.  But the admissions in Plaintiffs' own Complaint refute this.  By their own admission, Plaintiffs had enough information to notify Momentum of its purported infringement in June 2015.  D.I. 1 ¶¶ 23, 34.  And the claim charts attached to Plaintiffs' Complaint allege that Momentum infringes the '734 patent "based on the descriptions of the technology … found in" three scientific articles published in May 2015, June 2017, and December 2017.  D.I. 1 at 443, 470-72.  Thus, the information on which Plaintiffs base their infringement accusations was publicly available as early as December 2017, if not May 2015.  The three- to five-year delay (between either December 2017 or May 2015 and December 2020) is solely of Plaintiffs' own making, and "render[s its] arguments of timely enforcement unpersuasive."  *IOENGINE*,

2019 WL 3943058, at *7

**Second**, the timing of Momentum's request separately weighs in favor of a stay.  On the same day the PTAB instituted *inter partes* review of the '734 patent, Momentum asked Plaintiffs if they would dismiss the '734 patent with prejudice or stay the district court case pending the outcome of the '734 patent's IPR proceeding.  Ex. 3 (3/16/2022 M. Grant Email).  Momentum asked Plaintiffs to respond by close of business on March 18, 2022, and informed Plaintiffs that a failure to respond would be understood as a refusal to agree to either option and that Momentum would move to stay this litigation.  *Id.*  Plaintiffs responded on March 18 only that they would "respond in substance next week."  Ex. 4 (3/18/2022 A. Brausa Email).  Plaintiffs failed to provide any further response, and Momentum asked again on March 24 for Plaintiffs to provide its position.  Finally, on March 25, the parties met and conferred, and Plaintiffs stated that they would oppose a stay.  On the same day as that meet and confer, Momentum filed this motion.[4]  Timely filed requests do not suggest any dilatory or inappropriate motive, and therefore weigh in favor of a stay.  *See, e.g.*, *SunPower Corp. v. PanelClaw, Inc.*, No. 12-1633-GMS, 2014 WL 12774919, at *2 (D. Del. May 16, 2014) (finding no undue prejudice where motion to stay was filed "about two weeks after [defendant] filed its IPR petitions"); *VirtualAgility*, 759 F.3d at 1319-20 (holding that a motion to stay filed "almost immediately after filing the petition" does not evidence undue delay or tactical advantage).

**Third**, the status of the review proceedings weighs in favor of a stay.  This sub-factor weighs in favor of a stay when the timing of the petitions suggests that PTAB decisions would be "contemporaneous" with a district court trial on validity.  *British Telecomms.*, 2019 WL 4740156,

---

[4] Momentum similarly filed its original motion to stay just two days after its IPR petitions were submitted to the PTAB.  *See* D.I. 23.

at *6.  That is the case here.  By statute, the PTAB must issue final written decisions no later than twelve months from their institution decisions.  35 U.S.C. § 316.  Here, that deadline would be March 16, 2023.  Thus, any trial in this case would be scheduled to occur after the PTAB's final written decision is issued.  In such cases, where a stay would result in validity "only need[ing] to be tried once," while the absence of a stay would lead to two "contemporaneous" decisions or trials, this sub-factor "counsels in favor of a stay." *British Telecomms.*, 2019 WL 4740156, at *6; *IOENGINE*, 2019 WL 3943058, at *6 (same); *see also, e.g.*, *RetailMeNot*, 2020 WL 373341, at *8 (finding sub-factor weighs in favor of a stay when "the potential exists for an undesired duplication of effort and inconsistent outcomes" between PTAB proceedings and district court trial); *Huvepharma*, 2019 WL 3802472, at *1 ("Plaintiffs contemplate having anticipation and obviousness tried twice, whereas a stay will mean that those issues will only be tried once.").

**Fourth**, the relationship between the parties weighs in favor of a stay, because at least one of the two Plaintiffs in this action are "non-practicing entit[ies] that do[] not participate in the relevant market." *Princeton Digital*, 2014 WL 3819458, at *6.  Plaintiff MIT, which owns the '734 patent, is "a non-profit private research institute and educational institution" (D.I. 1 ¶ 2), and does not purport to practice the '734 patent or participate in the commercial market for wireless vehicle chargers.  Consequently, it "will not suffer any loss of market share or erosion of goodwill due to a stay." *Princeton Digital*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706-LPS, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent [plaintiff] does not practice will not greatly harm [plaintiff].").

As for WiTricity, which owns the '595 patent, the Complaint fails to allege that WiTricity is a competitor to Momentum or participates in the commercial market for wireless vehicle

chargers.  Instead, Plaintiffs describe WiTricity's business as "develop[ing] and patent[ing] …

core technology" and "acquir[ing] additional intellectual property."  D.I. 1 ¶ 19.  Tellingly,

Plaintiffs do not contend that WiTricity practices any of the asserted patents, only that it "provides

its licensees" with various support services.  D.I. 28 at 14-15; *see also id.* at 3-4 ("WiTricity's

work is reflected by the list of companies that have ***licensed*** WiTricity's intellectual property.");

D.I. 28-1, Ex. 5, at 2 ("WiTricity's business model is based on both technology transfer … and

patent licensing.").  Thus, both Plaintiffs concede they are non-practicing IP licensing entities

whom a "stay of proceedings … will not greatly harm."  *SZ DJI Tech.*, 2019 WL 1244948, at *2;

*Princeton Digital*, 2014 WL 3819458, at *6.

By contrast, there is no dispute that Momentum's business involves "commercializ[ing]"

and "installing … wireless electric vehicle charging systems."  D.I. 28 at 6.  That is the core of the

parties' relationship: Momentum "commercialize[s]" and "install[s]" wireless vehicle charging

systems using its own unique and highly successful methods, while WiTricity just licenses patents.

Because WiTricity "does not manufacture or sell the products covered by the patents in suit and

seeks to collect licensing fees," the parties "are not direct competitors," and this factor favors a

stay.  *Mission Abstract Data*, 2011 WL 5523315, at *4; *see also Ever Win*, 902 F. Supp. 2d at 510

(relationship of the parties factor supports a stay where "the[] facts of record . . . do not indicate

that the parties are direct competitors"); *CG Tech.*, 2019 WL 4098002, at *1 (no "undue" prejudice

where, among other considerations, "Plaintiff does not have a competing product").

Even if WiTricity did compete with Momentum, any prejudice resulting from a stay would

not be "undue."  *See Bio-Rad Labs. Inc., v. 10x Genomics, Inc.*, No. 18-1679-RGA, 2020

WL 2849989, at *2 (D. Del. June 2, 2020) (finding no undue prejudice even where the parties are

competitors).  That is especially true here, where Plaintiffs' five-year wait to file suit undermines

any claim of urgency.  *VirtualAgility*, 759 F.3d at 1319 (no undue prejudice where Plaintiff "for some unexplained reason, waited nearly a year . . . before it filed suit").  And because Plaintiffs elected not to seek a preliminary injunction, their actions "contradict[] [any] assertion that [they] need[] injunctive relief as soon as possible."  *Id.*; *see also Ever Win*, 902 F. Supp. 2d at 510 ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends.").

Based on each of the four sub-factors, Plaintiffs will not be unduly prejudiced by the requested stay, nor would the stay offer Momentum an inappropriate tactical advantage.  Instead, any delay that may occur as the result of a stay would not be undue, because Momentum worked diligently to file strong IPR petitions within months of the filing of Plaintiffs' Complaint, and sought a stay immediately thereafter.  And Plaintiffs cannot credibly insist on urgency now given their own years-long delay in bringing suit.

Overall, this factor weighs in favor of a stay.

\*       \*       \*

Because each of the *Princeton Digital* factors weighs in favor of a stay, the Court should stay this action pending resolution of the '734 patent's IPR proceedings.

## VI.    CONCLUSION

Momentum respectfully requests that the Court stay this action pending the resolution of the '734 patent's IPR proceedings and grant any other relief the Court deems just.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Maximilian A. Grant
Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
(202) 637-2200

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Blake R. Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

March 25, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 25, 2022, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                    *VIA ELECTRONIC MAIL*
Angela C. Whitesell, Esquire
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Daralyn J. Durie, Esquire                                    *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
Eric P. Berger, Esquire
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for Plaintiffs*

Christina M. Randall, Esquire                                *VIA ELECTRONIC MAIL*
JaeWon Lee, Esquire
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA  90013
*Attorneys for Plaintiffs*


/s/ *Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)