IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WITRICITY CORPORATION and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      Plaintiffs,<br><br> v.<br><br>MOMENTUM DYNAMICS CORPORATION,<br><br>      Defendant. | C.A. No. 20-1671 (MSG)<br><br>■■■■■■■■■■ |

**PLAINTIFFS' OPENING LETTER BRIEF TO THE
HONORABLE MITCHELL S. GOLDBERG REGARDING DISCOVERY DISPUTE
CONCERNING DEFENDANT'S CORE TECHNICAL DOCUMENT PRODUCTION**

OF COUNSEL:

Daralyn J. Durie
Adam R. Brausa
Eric P. Berger
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
ddurie@durietangri.com
abrausa@durietangri.com
eberger@durietangri.com

JaeWon Lee
Christina M. Randall
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
Telephone: 213-992-4499
jlee@durietangri.com
crandall@durietangri.com

Dated: May 26, 2022

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH LLP
Renaissance Center
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-63000
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs WiTricity Corporation and
Massachusetts Institute of Technology*

Dear Judge Goldberg:

Plaintiffs WiTricity Corporation and Massachusetts Institute of Technology ("Plaintiffs") respectfully request an order compelling Defendant Momentum Dynamics Corporation ("Defendant") to supplement its production of core technical documents to include documents sufficient to show how its accused products work. D.I. 57 at 3; *see also* D.I. 73 at 1 (reaffirming this obligation). Defendant produced 46 documents on April 15, 2022, but after a thorough review of these documents in conjunction with technical expert Professor Manos Tenders, it is apparent that Defendant's production is deficient. In particular, Defendant's production lacks sufficient information about Defendant's products to allow Plaintiffs to calculate Q-factors for the underlying resonators, a required claim element in the claims of both U.S. Pat. Nos. 7,741,734 (the "'734 Patent") and 9,184,595 (the "'595 Patent") (collectively the "Patents-in-Suit"); *see Cirba Inc. v. VMWare, Inc.*, No. 19-742-LPS, 2021 WL 7209447, at *6 (D. Del. Dec. 14, 2021) ("The core technical document production was designed to enable service of those preliminary [infringement] contentions."). The parties met and conferred in accordance with D. Del. Local Rule 7.1.1 on May 13, 2022, corresponded further regarding their dispute on May 16 and 18, 2022, and have reached an impasse.

**<u>Momentum Admits That Q-factors Are "Ubiquitous" Design Parameters for Resonators.</u>**

All of the claims of both Patents-in-Suit include limitations that require certain values for the quality factor, or "Q-factor" of a resonator. For example, independent claim 6 of the '734 Patent requires two electromagnetic resonators, each of which has a Q-factor greater than 100. *See* '734 Patent, claim 6. Similarly, claim 1 of the '595 Patent requires a magnetic resonator with a "perturbed" Q-factor that is at least 50% of the unperturbed Q-factor. *See* '595 Patent, claim 1. In the wireless power transfer field, Q-factors are well-known design parameters for electromagnetic resonators. Indeed, Defendant's own expert, Dr. Darrin J. Young, opines that the Q-factor "is a dimensionless constant that has been used to measure the 'quality,' or losses, of resonators[1] for decades." Young Decl. re '734 Patent IPR ("Young Decl.")[2] at ¶ 36. According to Defendant, "Q-factors have been 'ubiquitous' in resonator design since at least the 1950s." Defendant's '734 Patent IPR ("'734 IPR Petition") at 1. The equations and parameters necessary to calculate Q-factors for a resonator and describe the characteristics of a resonator are also known in the art. As Dr. Young opines, "the variables" used to describe resonators are known in the art, and resonator structures are described "based on their quality factor, resonant frequency, resonant width, size, coupling coefficient, size, and width." Young Decl. at ¶ 81.

Public documents authored by Defendant's engineers further confirm that Q-factors and the underlying parameters used to calculate them are known in the art. For example, in one article Defendant engineers state that "for good efficiency, the [ground assembly] and [vehicle assembly] coils should be high Q, that is, have relatively low resistance compared to reactance."

---

[1] Dr. Young also opines that a "resonator can be any structure that resonates at a fixed frequency." *See id.* at ¶ 136
[2] Copies of all cited documents can be provided upon request.

1

http://www.how2power.com/pdf_view.php?url=/newsletters/1712/articles/H2PToday1712_design_MomentumDynamics.pdf.  The article also includes a table of model design parameters relating to ground assembly (GA) and vehicle assembly (VA) coil resonators:

| Parameter | Value | Parameter | Value |
|---|---|---|---|
| GA inductance, $L_p$ (µH) | 184.8 | Coefficient coupling, k (unitless) | 0.2 |
| Leakage inductance, $L_{lp}$ (µH) | 147.84 | VA inductance, $L_s$ (µH) | 184.8 |
| Mutual inductance, M (µH) | 36.96 | Leakage inductance, $L_{ls}$ (µH) | 147.84 |
| GA coil resistance, $r_p$ (mΩ) | 3.89 | VA coil resistance, $r_s$ (mΩ) | 3.89 |
| Primary Capacitance, $C_p$ (nF) | 21.95 | Secondary Capacitance, $C_s$ (nF) | 23.72 |
| MOSFET Res, $r_{mos}$ (mΩ) | 0.8 | Diode resistance, $r_{dio}$ (mΩ) | 0.5 |

*Id.*  In other publications, Defendant states that it prefers to use "a more modest Q factor" than some others in the industry (*see* https://ieeexplore.ieee.org/document/7956328), and also notes that the "current popular technical paradigm insists high resonator quality factor Q . . . is essential for efficient power transmission by means of resonant induction."  *See* https://ieeexplore.ieee.org/document/7103359.  Defendant's publications also include detailed discussion of the equations necessary to calculate Q-factors, based on design parameters like the intrinsic rate of loss, the coupling coefficient, the coupling rate, inductance, capacitance, and resonance to describe wireless power transfer between two coupled resonators.  *Id*.

**Defendant's Production is Missing Sufficient Information to Calculate Relevant Q-Factors.**

For both Patents-in-Suit, Defendant alleges it does not infringe, because its system does not include resonators that satisfy the Q-factor limitations.  D.I. 55 at Counterclaim ¶¶ 84, 92.  Defendant's initial "core technical document" production is deficient, because it does not contain the information necessary for Plaintiffs to calculate Q-factors for Defendant's resonators, to evaluate Defendant's claims that it does not infringe the Patents-in-Suit, and to make an informed decision about whether to drop the '734 Patent—the purpose of proceeding with the core technical document production.  During the parties' meet and confers, Defendant's counsel asserted that Defendant is not aware of any non-privileged documents referring to a Q-factor and expressed confusion about what information Plaintiffs believed was missing from the production.  Email from B. Davis (May 18, 2022).  While Plaintiffs find Defendant's assertion that it has *no* internal technical documents referencing Q-factors implausible—in view of Defendant's own public publications and its expert's testimony on the "ubiquitous" nature of Q-factors—even if this were the case, Defendant must nonetheless have technical documentation that shows the design parameters necessary to calculate the Q-factors for its resonators, particularly in view of its own public articles and statements made in the IPR.

Defendant has pointed to the fact that the documents it produced are technical in nature and relate to how the accused products function, so nothing more is required.  Letter from B. Davis (May 9, 2022).  But this ignores the fact that the sufficiency of Defendant's production should be measured with respect to whether the documents shed light on functionality related to

the claim elements. Here, as Plaintiffs have repeatedly explained, Defendant's production does not allow for the calculation of Q-factors. For example, datasheets produced by Defendant identify a "Power Factor" of ▇▇▇▇▇▇▇ and "Power Transfer Efficiency" of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but these numbers alone do not allow for the calculation of the claimed Q-factors. *See, e.g.*, MOMENTUM_0000112. The datasheets also identify a nominal operational frequency value of ▇▇▇▇. *Id*. But this nominal value is insufficient to calculate the Q-factor of any individual resonator, because it does not identify the frequency range over which power transfer occurs during actual operation and the associated resonant frequency or loss rate. That information would likely be contained in documents showing Defendant's simulation and/or testing of the system's power transfer in terms of frequency and load, but which Defendant has refused to produce. *See* E. Berger letter (May 3, 2022) at 2–3.

Similarly, the schematics and user manuals contain visual representations and descriptions of components of Defendant's system, but they do not identify the underlying parameters that would enable calculation of Q. *See, e.g.*, MOMENTUM0000152-107. For example, Defendant produced schematics that show a ▇▇▇▇▇▇▇▇▇ and user manuals that list external width, length, and height dimensions of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id*.; *see also, e.g.*, MOMENTUM0000360. But for this information to be useful for calculating Q-factors, Defendant needs to also provide the dimension of ▇▇▇▇▇▇, material properties for ▇▇▇▇▇▇▇▇▇▇▇▇▇, material properties for ▇▇▇▇▇▇▇▇▇▇▇▇▇, and information on the associated packets, screws, pin proximity, and connectors as well as loss and value/dimensions tolerance/variability of the utilized components, each of which could significantly affect the associated Q-factors. Defendant's contention that it is unsure what information Plaintiffs need is again at odds with Defendant's own statements, such as the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See, e.g.*, MOMENTUM0000234. Despite this acknowledgement, Defendant has not produced documents identifying the capacitance and inductance of the coils.

For these reasons, Plaintiffs respectfully request that the Court enter the attached Proposed Order and require Defendant to produce core technical documents within two weeks that are sufficient to describe Q-factors for the individual resonators in the accused wireless power transfer system. While Plaintiffs do not believe the scope of this request is reasonably in dispute, to avoid any uncertainty, Plaintiffs are seeking documents that include a full description of at least the following parameters for each individual resonator (both unloaded as designed and loaded, i.e., during actual power transfer) in Defendant's system: resonant frequency ($\omega$), resonance width or intrinsic loss rate ($\Gamma$), resistance (R), inductance (L), and capacitance (C). Additionally, Plaintiffs reasonably believe that Defendant should have documents referring to the coupling coefficients or coupling rate between coupled resonators. Additional information bearing on accurate Q-factor calculations will also likely be found in simulations and testing documents relating to the accused system, that show operation as a function of frequency and for different loads. Plaintiffs also respectfully request an additional 45 days to review any additional documents produced by Momentum before making its election with respect to the '734 Patent.

Respectfully submitted,

/s/ Daniel M. Silver

Daniel M. Silver (#4758)

cc: Counsel of Record (via E-Mail)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WITRICITY CORPORATION and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>                Plaintiffs,<br><br>v.<br><br>MOMENTUM DYNAMICS CORPORATION,<br><br>                Defendant. | C.A. NO. 20-1671 (MSG) |

## [PROPOSED] ORDER

**AND NOW**, this ____ day of _____ 2022, upon consideration of the parties' letter briefing concerning their discovery dispute, it is hereby **ORDERED** that:

1. Plaintiffs' motion to compel supplemental production of core technical documents from Defendant Momentum Dynamics Corporation is **GRANTED**.

2. Within fourteen (14) days of this Order, Defendant shall produce the following documents, to the extent they exist, or if Defendant believes it has already produced the documents listed below, identify where the documents exist in Defendant's production by the Bates Number.

    i. Documents sufficient to evaluate the Q-factors claimed in the Patents-in-Suit for each resonator (both unloaded as designed and loaded, i.e., during actual power transfer) in Defendant's accused system (including both ground assembly and vehicle assembly);

    ii. Documents sufficient to show the circuit parameters in each resonator (both unloaded as designed and loaded, i.e., during actual power transfer) in Defendant's accused system (including both ground assembly and vehicle assembly) related to Q-factors, such circuit parameters to include at least resonant frequency ($\omega$), resonance width or intrinsic loss rate ($\Gamma$), resistance (R), inductance (L), and capacitance (C); and

    iii. Documents sufficient to show the simulation and testing setup and results for each resonator (both unloaded as designed and loaded, i.e., during actual

2

    power transfer) in Defendant's accused system (including both ground assembly and vehicle assembly) for wireless power transfer as a function of frequency and for different loads (e.g., bus and passenger car).

3. Within forty-five (45) days of receiving Defendant's supplemental production in accordance with paragraph 2 of this Order, Plaintiffs' shall make their election of asserted claims with respect to the U.S. Pat. No. 7,741,734 (the "'734 Patent").

**BY THE COURT:**

_____

**MITCHELL S. GOLDBERG, J.**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on May 25, 2022 on the following counsel in the manner indicated:

**VIA EMAIL**
Jack B. Blumenfeld
Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

Maximilian A. Grant
Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200
max.grant@lw.com
matthew.moore@lw.com
gabriel.bell@lw.com

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600
jeff.homrig@lw.com

Blake R. Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
blake.davis@lw.com

*Attorneys for Defendant Momentum, Dynamics Corporation*

Dated: May 25, 2022            */s/ Daniel M. Silver*
                               Daniel M. Silver (#4758)

ME1 40721235v.1