IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WITRICITY CORPORATION and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, )<br><br>Plaintiffs,<br><br>v.<br><br>MOMENTUM DYNAMICS CORPORATION,<br><br>Defendant. | C.A. No. 20-1671 (MSG) |

**LETTER TO THE HONORABLE MITCHELL S. GOLDBERG FROM MOMENTUM DYNAMICS IN RESPONSE TO PLAINTIFF'S MAY 25, 2022 LETTER**

OF COUNSEL:

Maximilian A. Grant
Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Blake R. Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

June 1, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant*

Dear Judge Goldberg:

We write on behalf of Momentum in response to Plaintiffs' May 25 letter. D.I. 76. Plaintiffs complain that Momentum's core technical document production is deficient—and seek to delay the Court-ordered deadline for making their decision whether to stay the case or dismiss the '734 patent with prejudice. Plaintiffs contend that Momentum withheld documents disclosing "Q factors" for the accused products. As Momentum has repeatedly conveyed to Plaintiffs, however, that is wrong. Plaintiffs simply refuse to accept Momentum's representation.

As confirmed by Momentum's core document production, ***Momentum does not use Q as a design parameter, and therefore, does not calculate Q for the accused products in the ordinary course of business***. Plaintiffs' refusal to accept Momentum's representations highlights the fundamental, flawed assumption in Plaintiffs' infringement allegation. Plaintiffs' patents, rooted in theoretical calculations with little or no commercial utility, read like the research papers that invalidate those patents. Plaintiffs seemingly believe that a wireless power transfer system can only be developed by using theoretical models to perfect its Q factor and other characteristics. That (misguided) technical perspective explains why Plaintiffs have been unable to design and release a commercial product. Momentum designed its products differently, relying on practical implementations, and refining them until they worked in the real world. In Momentum's real-world development paradigm, one need only test performance characteristics that matter to end users, such as power transfer, efficiency and alignment. From the perspective of Momentum's development, Q has no practical significance and Momentum does not calculate it.

Consequently, the documents Plaintiffs seek do not exist. Momentum searched for non-privileged documents relating to Q factors for the accused products before it made its core technical production. Momentum searched a second time in conjunction with its core technical production. And after Plaintiffs complained, Momentum conducted a third search. Based on this more than diligent search for additional responsive documents disclosing Q factors for its commercial products (i.e., the accused products), there are no such documents.

Momentum represents to the Court that it has satisfied its core document production by producing documents created in the ordinary course of business that are more than sufficient to show how the accused products work, as the Scheduling Order requires. D.I. 57 ¶ 6.b; D.I. 73. Momentum has no documents that calculate Q factor for its products. There is no compelling reason to postpone Plaintiffs' decision on the '734 patent dismissal/case stay.

      A.      **Momentum produced its core technical documents on April 15, 2022**

Plaintiffs accuse two generations of Momentum's wireless electric vehicle charging systems: Gen 1 and Gen 2. Those systems include a "Ground Assembly" and a "Vehicle Assembly," which are the portions of the products that Plaintiffs allege contain "resonators" meeting the limitations of the '595 and '734 patents. On April 15, 2022, Momentum produced 46 documents comprising nearly 500 pages of confidential and highly confidential documents demonstrating the operation of its two generations of products.

Weeks later, Plaintiffs complained that the production was deficient because it contained "at most high level, and often public" documents, and lacked any "detailed design documents" or

"specifications" for the accused products. E. Berger letter (May 3, 2022). Plaintiffs now tell the Court that Momentum's response simply "pointed to the fact that the documents it produced are technical in nature and relate to how the accused products function, so nothing more is required." D.I. 76 at 1. Plaintiffs misrepresent Momentum's response. Momentum responded by identifying, by specific bates numbers, the following four categories of confidential and trade secret documents that Plaintiffs claimed were missing:

(1) detailed schematics showing the "particular circuit components and their interconnections in Momentum's products, including within the resonators in the vehicle and ground assemblies,"

(2) assembly documents identifying the "technical features and components and how those components are arranged in the products,"

(3) operation, maintenance and training manuals for the accused products, and

(4) datasheets including specifications for Momentum's products.

B. Davis letter (May 9, 2022). Momentum explained how these and the other documents produced more than met the Court's requirements. *Id.*; D.I. 57 ¶ 6.b. Plaintiffs filed their letter brief without responding. *See* D.I. 76; *see generally* E. Berger emails (May 16 & May 18, 2022) (not disputing that Momentum met the Court's requirements). That alone warrants denial of Plaintiffs' motion.

### B. Documents identifying a Q factor for the accused products do not exist

Momentum went beyond what the Scheduling Order requires. When the parties conferred, Plaintiffs' stated concern was that Momentum's production lacked documents that refer to a quality factor ("Q") for the resonators in Momentum's products. *See* B. Davis email (May 13, 2022). Momentum agrees that the asserted patent claims require resonators having a particular "Q" and that documents specifying Q for resonators in the accused products would qualify as core technical documents; that is why Momentum searched for them before making its production. *See* D.I. 76 at 2. To avoid dispute, Momentum agreed to search again for documents describing a "Q factor" or from which a specific "Q Factor" for the products could be calculated. As Momentum told Plaintiffs, no such documents were found. *See* B. Davis email (May 18, 2022).

Plaintiffs refuse to accept counsel's representation, speculating there "must" be more information and it is "implausible" that Momentum could design its products without creating documents that track the "Q factor" of the asserted patents. *See* D.I. 76 at 1-3. The disconnect is that these theoretical patents do not describe ***any*** commercial products, let alone Momentum's. The patents instead describe theoretical models and equations bereft of useful disclosures for how a working system is actually designed. Indeed, the patents are little more than research papers alleging to have invented resonators with arbitrary values for Q (e.g., Q>100). The prior art shows theoretical models describing Q, which is why Momentum's IPRs have succeeded. But those theoretical models for Q are unnecessary and impractical in Momentum's real world products.

Plaintiffs provide three purported reasons why Momentum "must" have additional documents relating to Q. None hold water. *First*, Plaintiffs cite Dr. Young's statements about Q in support of Momentum's '734 patent IPR. D.I. 76 at 2. But Dr. Young's statements refer to the prior art describing the same theoretical calculations claimed in Plaintiffs' patents, not to

2

Momentum's product development.  *Second*, Plaintiffs reference "[p]ublic documents authored by Defendants engineers" that reference "Q factor."  D.I. 76 at 1-2.  As Momentum explained, these papers do not describe Momentum's commercial products and do not show "how the accused product(s) work(s)."  *See* B. Davis email (May 18, 8:46 pm).  They instead illustrate that Momentum does not view "Q factor" as an important design parameter.  For example, Plaintiffs quote an article as stating the "current popular technical paradigm insists high resonator quality factor Q . . . is essential for efficient power transmission."  D.I. 76 at 2.  In fact, that article analyzes "theoretical argument[s]" that go "***against*** the current paradigm," and concludes that parameters ***other than Q*** are the "path forward."[1]  *Third*, Plaintiffs contend that they cannot determine Q from the production, and because Momentum asserts that it does not infringe those limitations, it must be withholding documents.  D.I. 76 at 2.  It follows that if Momentum is *not* withholding documents (as its counsel represents to the Court), then Plaintiffs lack a good faith basis to proceed.  *Cf.* FED. R. CIV. P. 11(b).  This confirms the entire action should be dismissed.

Because Plaintiffs "offer[] nothing concrete to cast doubt on [Momentum's] representation that it is not in possession of core technical documents" identifying Q for its products, there is no basis for a supplemental production.  *See CyDex Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc. et al*, No. 17-1832, D.I. 48 (D. Del. Apr. 12, 2022) (denying motion to compel).

### C. Plaintiffs' attempt to expand "core technical documents" is improper

Plaintiffs are wrong to suggest that the "core technical documents" standard requires immediate production of "a full description of at least the following parameters for each individual resonator (both unloaded as designed and loaded, i.e., during actual power transfer) in Defendant's system: resonant frequency (ω), resonance width or intrinsic loss rate (Γ), resistance (R), inductance (L), and capacitance (C)."  D.I. 76 at 3.

Momentum has produced and identified by bates numbers the circuit schematics that identify specific capacitances, inductances, and resistances in the accused products to the extent those values are documented as part of the design.  *See, e.g.*, MOMENTUM_0000367-483.  Momentum has produced datasheets describing the intended operational frequency of its products.  *See, e.g.*, MOMENTUM_0000111-0122.  Plaintiffs cite no authority justifying expansion of "core documents" to include all documents arguably related to infringement, which would require parties to complete their entire document production now and render later deadlines for substantial completion of document production meaningless.  *See Cydex*, *supra*, D.I. 48.

Plaintiffs' letter brief to the Court is merely a ploy to seek more time for the Plaintiffs to make a decision about their patent infringement case, and accelerate discovery for a patent that the PTAB determined is likely invalid.  D.I. 60. Momentum respectfully requests that the Court deny Plaintiffs' motion and enforce the existing deadline by which Plaintiffs must decide whether to stay this case or dismiss the '734 patent with prejudice.  D.I. 73.

---

[1] https://ieeexplore.ieee.org/document/7772057/.  Plaintiffs other selective citations to Momentum's articles are similarly devoid of context.  *See* D.I. 76 at 1-2.  Notably, none of the articles identify or calculate a particular value of Q, even for the theoretical models discussed.

                    Respectfully,

                    */s/ Jack B. Blumenfeld*

                    Jack B. Blumenfeld (#1014)

JBB/dss
cc:    All Counsel of Record (via electronic mail)